**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Dino Joseph Bennetti,
Plaintiff
-vs-
Ryan Thornell, et al.,
Defendants.

CV-25-0169-PHX-DWL (JFM)

**Report & Recommendation**

## I.  MATTER UNDER CONSIDERATION

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1).  The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A.  FACTUAL BACKGROUND

The following summary of the facts is drawn from the decision of the Arizona Court of Appeals in disposing of Petitioner's direct appeal.

> At the time of his plea, the defendant stated that on the day of the offenses, he was without money or food. He  went to his apartment for identification to cash a check,  which he could not find, and left after stealing his  roommate's gun. He subsequently met the victim, who  agreed to give him a ride to Buckeye. [Bennetti] claimed  that after they began traveling, the victim attempted to  sexually assault him. [Bennetti] explained that after he  repeatedly and unsuccessfully requested the victim to  stop the car, he pulled the gun to let the victim know that  he wanted to get out. [Bennetti] stated that he had not  intended to hurt the victim but that he had had a vision of  a relative who allegedly had sexually assaulted him in the  past when he changed his mind and ordered the victim to  continue driving. [Bennetti] further stated that when they  reached the desert, he

- 1 -

> instructed the victim to get out of the car, shot him three times in the back of his head, picked up the victim's wallet and took the victim's money and vehicle to Tucson.
>
> The State suggested that [Bennetti's] intent to steal the victim's money and car was formed when [Bennetti] came in contact with the victim. Indeed, [Bennetti] admitted during a psychological examination that he had lied about the victim's sexual advances, stating that he had been hungry. [Bennetti] also responded affirmatively when the psychologist questioned whether [Bennetti] had killed the victim to obtain money to buy food.

(Exh. H, Mem. Dec. 7/24/92 at 3-4.) (Exhibits to the Answer (Doc. 10) are referenced herein as "Exh. ___.") Petitioner was 17 years old at the time he committed his offenses. (Order (Ninth PCR) 5/25/23 at 1.)[1] He was prosecuted as an adult. (Exh. H, Mem. Dec. 7/24/92 at 2, n. 1.)

## B. TRIAL

Petitioner[2] was indicted on September 5, 1990 in Maricopa County Superior Court on charges of first-degree murder, kidnapping, armed robbery, and theft. (Exh. C, Indictment.) He was prosecuted as an adult. (Exh. H, Mem. Dec. 7/24/92 at 2, n. 1.) He eventually entered into a written plea agreement (Exh. W), and pled no contest to the armed robbery and guilty to the other three charges. (Exh. Y, Oder 4/18/91.) On May 17, 1991 he was sentenced to life with the possibility of parole after 25 years on the murder charge, and consecutive sentences of 10.5 years for kidnapping and 10.5 years on the armed robbery, and 6 years on the theft to run concurrent with the armed robbery. (Exh. H, Mem. Dec. 7/24/92 at 3; Exh. EE, Sentence.)

The Sentencing Judgment identified the sentence on the murder charge as "Life

---

[1] Petitioner challenges his purported sentence to life without parole for a juvenile offense. Accordingly, particular attention is given in this summary to the sentence and proceedings related to such claims.

[2] Petitioner was prosecuted under the name **Paul Charles Dinatale**, but in 1995 began using the alias **Anthony Tucci** in his First PCR proceeding (Exhs. N, OO), added the alias **Brian James Daniels** (identified as his legal name) in 2002 in his Second PCR proceeding (Exhs. F, QQ), in 2006 eliminated Tucci and added **Dino Joseph Bennetti** in his Fourth PCR proceeding (Exhs. G, VV), eliminated Daniels in his Fifth PCR (Exh. XX), changed the spelling of his alias to "**Denatale**" or alternatively "**DeNatale**" in his Eighth PCR Proceeding (Exhs. JJJ, LLL).

Imprisonment (pursuant to Ariz. Rev. Stat. § 13-703)."[3] (EE, Sentence at 2.) Similarly, the appellate decision described it as "life imprisonment." However, the statute (§13-703) provided only two possible sentences for first degree murder, death or "life, without possibility of release on any basis until the completion of the service of twenty-five calendar years." 1988 Ariz. Legis. Serv. 155 (West) (amending §13-703). At the sentencing hearing, the trial judge pronounced the sentence as "life imprisonment for first degree murder." (Ex. BB, R.T. 11/17/91 at 33.) However, he had previously recognized that the plea agreement "stipulated to a sentence of life imprisonment, which does, then, serve 25 years in prison before you are eligible for a parole hearing." (*Id.* at 31.) In dismissing Petitioner's PCR petition based on the imposition of a life sentence, the PCR court recounted: "Defendant was sentenced to life imprisonment for the first-degree murder charge with the possibility of parole after 25 years." (Exh. CCCC, Order 5/25/23 at 1.)

## C.  DIRECT APPEAL

Petitioner filed a direct appeal, asserting there were as an insufficient factual basis for the armed robbery. In a Memorandum Decision issued July 24, 1992 (Exh. J) the Arizona Court of Appeals found no merit to the asserted claims, reviewed the record for "fundamental error" and found none, and affirmed Petitioner's convictions and sentences.

Petitioner did not file a motion for reconsideration or petition for review by the Arizona Supreme Court, and on July 23, 1992, the Arizona Court of Appeals issued its Mandate (Exh. FF).

## D.  POST-CONVICTION RELIEF
### 1.  First PCR – 2/28/95 to 9/26/96

On March 7, 1995, Petitioner commenced his first post-conviction relief (PCR) proceeding by filing a PCR Notice (Exh. GG), dated February 28, 1995. The PCR court

---

[3] In 2008, § 13-703 was renumbered as § 13-751. 2008 Ariz. Legis. Serv. Ch. 301 (H.B. 2207).

summarily dismissed his Petition as without merit. (Exh. NN, Order 6/1/96.)    Petitioner sought reconsideration (Exh. OO) which was denied in an Order dated August 22, 1996 and filed August 27, 1996.  (Exh. PP, Order 8/22/96).    Thereafter, Petitioner had 30 days to file a petition for review. Ariz. R. Crim. Proced. 32.9(c) (1996). Moreover, at the time, Arizona applied Arizona Rule of Criminal Procedure 1.3 to extend "the time to file an appeal by five days when the order appealed from has been mailed to the interested party and commences to run on the date the clerk mails the order." *State v. Zuniga*, 163 Ariz. 105, 106, 786 P.2d 956, 957 (1990).  Here, there is no indication that the Memorandum Decision was delivered to Petitioner or his counsel by any means other than mailing. Further, Arizona calculates such time from the date of filing of the order, rather than its issuance.  *See Matter of Maricopa County Juvenile Action No. JS-8441*, 174 Ariz. 341, 343, 849 P.2d 1371, 1373 (1992) (concluding on the basis of fundamental fairness, that a minute order be deemed entered on the latest date reflected however denominated).  Thus, Petitioner had 35 days after the filing of the PCR court's decision on reconsideration, filed August 27, 1996, or until Tuesday, October 1, 1996, to see further review.

However, Petitioner did not seek further review.  (*See* Answer, Doc. 10 at 12 (asserting none); Petition, Doc. 1 at 4 (identifying no PCR proceedings in state court).

### 2.  Second PCR – 8/21/02 -1/16/04

On September 19, 2002 (some five years after his first PCR proceeding was concluded), Petitioner commenced his second PCR proceeding by filing a PCR Notice (Exh. QQ) dated August 21, 2002.  The PCR court summarily dismissed the proceeding as untimely and/or barred under Arizona's preclusion rules in Ariz. R. Civ. Proc. 32.2(b). (Exh. RR, Order 10/3/2002.)    Petitioner sought review by the Arizona Court of Appeals, which was denied on December 17, 2003.  (Exh. SS, Order 12/17/03.)    Thereafter, Petitioner had 35 days to seek review by the Arizona Supreme Court.  Ariz. R. Crim. Proced. 32.9(g) (2002) (applying Rule 31.19 to further review); Ariz. R. Crim. Proced. 31.19(a) (2002) (30 days); Ariz. R. Crim. Proced. 1.3 (5 days after mailing).  Petitioner

did not do so, and his time expired on Wednesday, January 21, 2004.

### 3.  Third PCR – 8/4/05-4/10/06

On January 6, 2006 (almost two years after his second PCR proceeding was concluded), Petitioner commenced his third PCR  proceeding by filing a PCR Notice (Exh. TT) dated August 4, 2005.  In an Order filed March 9, 2006, the PCR court summarily dismissed the proceeding as untimely and without merit.  (Exh. UU, Order 3/7/2006.) Thereafter, Petitioner had 35 days to file a petition for review. Ariz. R. Crim. Proced. 32.9(c) (2005); Ariz. R. Crim. Proced. 1.3 (5 days after mailing). However, Petitioner did not seek further review.  His time to do so expired on Thursday, April 13, 2006.

### 4.  Fourth PCR – 12/12/06-2/21/07

On December 28, 2006 (over eight months after his third PCR proceeding was concluded), Petitioner commenced his fourth PCR proceeding by filing a PCR Notice (Exh. VV) notarized on December 12, 2006.  In an order filed January 22, 2007, the PCR court summarily dismissed the proceeding as untimely and without merit.  (Exh. WW, Order 1/17/07.)  Thereafter, Petitioner had 35 days to file a petition for review. Ariz. R. Crim. Proced. 32.9(c) (2006) (30 days); Ariz. R. Crim. Proced. 1.3 (5 days after mailing). However, Petitioner did not seek further review.  His time to do so expired on Monday, February 26, 2007.

### 5.  Fifth PCR – 4/17/09-11/5/09

On April 28, 2009 (over 14 months after his fourth PCR proceeding was concluded), Petitioner commenced his fifth PCR proceeding by filing a PCR Notice dated April 17, 2009 (Exh. XX, Doc. 10-2 at 208), along with an interwoven Motion for Appointment of Counsel dated April 20, 2009 (*id.*at 215).  In an order filed October 6, 2009, the PCR court summarily dismissed the proceeding as untimely.  (Exh. YY, Order 9/28/09.)  Thereafter, Petitioner had 35 days to file a petition for review. Ariz. R. Crim.

Proced. 32.9(c) (2009); Ariz. R. Crim. Proced. 1.3 (5 days after mailing). However, Petitioner did not seek further review. His time to do so expired on Tuesday, November 10, 2009.

### 6. Sixth PCR – 8/19/10-9/24/10

On August 19, 2010 (over eight months after his fifth PCR proceeding was concluded), Petitioner commenced his sixth PCR proceeding by filing a PCR Notice. (*See* Exh. ZZ Order 9/7/10 at 1.) A copy of this Notice is not provided, and the date it was signed or mailed is unknown. In an order filed September 9, 2010, the PCR court summarily dismissed the proceeding as untimely. (*Id*.) Thereafter, Petitioner had 20 days (until Wednesday, September 29, 2010) to file a motion for rehearing. Ariz. R. Crim. Proced. 32.9(a) (2010) (15 days); Ariz. R. Crim. Proced. 1.3 (5 days after mailing). On November 18, 2010 he filed an untimely motion for rehearing, explicitly referencing the Order dated September 7, 2010, but (according to Respondents) discussing claims in his Fifth PCR proceeding and adding new claims. (Exh. AAA, Mot. Rehrg. at 3; Answer, Doc. 10 at 16.) No resolution of that motion for rehearing appears in the record of this case, and it is presumed to remain pending.

### 7. Seventh PCR – 2/22/12-Present

On February 27, 2012 (over 18 months after the expiration of his time to seek reconsideration in his sixth PCR proceeding) Petitioner commenced his seventh PCR proceeding by filing a PCR Notice dated February 22, 2012. (*See* Exh. BBB.) The Notice asserted claims that he was on psychotropic medications when entering his pleas, prosecutorial misconduct by having Petitioner sign his plea agreement without the presence of counsel, and coercion of a mentally ill, 17-year-old defendant.

In an order filed March 9, 2012, the PCR court dismissed the proceeding. (Exh. CCC, Order 3/6/12.) The court reasoned that Petitioner's claim based on coercion was precluded as previously litigated and thus failed to support an untimely PCR proceeding,

and his psychotropic drugs claim was conjectural and thus not colorable, and Petitioner had not shown diligence in finding the facts, and the claim was untimely and not subject to the exception under Rule 32.1(e) for claims based on newly discovered evidence.

Thereafter, Petitioner had 20 days, or until Thursday, March 29, 2012, to move for rehearing. Ariz. R. Crim. Proced. 32.9(a) (2012) (15 days from ruling); Ariz. R. Crim. Proced. 1.3 (2012) (5 days for mailing). Some six days after, on April 4, 2012 Petitioner filed: (a) at 4:04 p.m. a Motion for Rehearing (Exh. S-1) dated March 29, 2012 with an attached Affidavit (Doc. 33-1); and (b) at 4:05 p.m. the same Motion for Rehearing (Exh. DDD) dated March 29, 2012 but without an attached affidavit. These two filings are reflected on the index of record on appeal as filed on April 4, 2012. (Exh. A, Index ROA at 10, items 204, 205.)

In an Order filed December 20, 2013, the PCR court noted:

> The Rule 32 Unit has presented this court with two motions which this court had not seen previously: (1) motion for extension of time in which to file a petition for review; and, (2) motion for extension of time to file a motion for re-hearing dated 3/29/12 and filed 4/4/12 concerning this court's Order of 3/6/12 denying defendant's notice of post-conviction relief filed on 2/27/12.

(Exh. FFF, Order 12/16/13 at 1.) The PCR court granted the motion to extend regarding the motion for rehearing (*id.* at 2), but denied the motion regarding a petition for review as premature (*id.*). The former ruling directed:

> Granting defendant's motion for extension of time to file a motion for re-hearing of the court's finding 3/6/12 Order finding adequate cause for the delay in filing the same.

(*Id.*)

Neither of the two motions referenced by the PCR court appear on the record. (*See* Ex. A, Index ROA at 10, items filed from 3/9/12 thru 12/30/13.) Respondents assert that, despite diligent efforts, neither copies of the referenced documents nor evidence of their filing have been located. (Supp. Answer, Doc. 33 at 5-6.)

Respondents argue that this Court should conclude that the grant of the extension of time for rehearing should be viewed, not as a finding that the April 4, 2012 motion(s)

for rehearing was timely, but as a grant of leave to file a then not-yet-filed (and never filed) motion for rehearing.  (Supp. Ans., Doc, 33 at 10.)   Respondents base this on: (1) the Order's directive  granting an extension "to file a motion for rehearing"; (2) the PCR court went on to discuss claims not discussed in the filed motion(s) for rehearing (3) the PCR court's failure to specify that it had been presented with the filed motions for rehearing; and (4) the PCR court's failure to explicitly find the already filed motion(s) timely.

For the following reasons, the undersigned finds that the December 20, 2013 Order deemed the April 4, 2012 motion(s) for rehearing timely.  **First**, the PCR court had described the granted motion to extend as seeking an extension for the motion for rehearing "filed 4/4/12," not as seeking leave to file some other motion for rehearing.

**Second**, the PCR court's reference to documents "not seen previously" suggests not merely  that the particular judge had not looked at them, but that they had not previously been made a part of the record.  This comports with the practical relationship between the clerk of a court and the court itself.  Clerks receive a variety of documents, but until they are filed and docketed, the judges generally have neither notice nor the ability to review such documents.   And in an era of electronic filing (which applied to the PCR court given its reference in its Order that the case was "eFiling eligible"), an assigned judge commonly automatically receives notice of all filings in a case.  In this case, the December 20, 2013 Order was issued by Judge Robert L. Gottsfield, the same judge who had issued the dismissal being challenged.  (*See* Exh. CCC, Order 3/9/12.)  And the judge noted that the filings had been presented by the "Rule 32 Unit," which would be consistent with unfiled documents. Thus, Judge Gottsfield would not be expected to reference the previously filed motion(s) for rehearing as being newly "presented" to the court.

**Third**, assuming the motion for extension sought an extension to file some other motion for rehearing (despite the PCR court's description that it was directed at the April 4, 2012 filing), the PCR court would have been expected to either set a deadline for any such motion to be filed, or to direct the filing of a lodged motion for rehearing presented with the motion to extend.   The PCR court did neither.

**Fourth**, the PCR court's discussion of *Graham, Miller* and similar cases was not disconnected from either the seventh PCR proceeding or the motion for rehearing therein. The seventh PCR notice specifically referenced Petitioner's minority at the time, and his motion(s) for rehearing specifically argued cruel and unusual punishment of a juvenile offender under the Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551 (2005) (death penalty for juvenile offenders cruel and unusual).   (Exh. DDD, Mot. Rehearing at 4.)

Respondents assert they have been unable to find any resolution of the filed motion(s) for rehearing.  (Supp. Answer, Doc. 33 at 6.)

To the contrary, the PCR court granted the motion for rehearing and allowed the seventh PCR proceeding to continue on the limited ground that Petitioner's allegations of his minority at the time of his plea (and thus at the time of the offense) could be valid *Miller* claims.   The court ruled:

> The court grants defendant's seventh notice of post-conviction relief on the one issue that he was 17 years old when he committed one or more of the capital crimes for which he was convicted.
> In view of this ruling the motion for extension of time to file a petition for review is now moot and denied without prejudice.  If in the future defendant's requests for relief are denied (ie the re-hearing and the seventh [sic] [eighth] Rule 32) then it would be appropriate to request additional time to file a petition for review by a higher court to consider such rulings.

(Exh. FFF, Order 12/20/13 at 2.)

The record provides no reference to a separate ruling on the allowed claim based on minority when the offense committed from the seventh PCR proceeding. Indeed, Petitioner's PCR Petition in his eighth PCR proceeding asserts his "2012" proceeding was "still in court."  (Exh. JJJ, 2015 PCR Pet. at 3.)   However, this claim was included in Petitioner's Eighth PCR Petition (Exh. JJJ at 4-J to -K), and fully litigated as part of that proceeding. And the ruling in the eighth PCR proceeding anticipates the simultaneous resolution of both proceedings, *i.e.* "requests for relief are denied (ie the rehearing and the seventh [sic] [eighth] Rule 32."  (Exh. FFF, Order 12/20/13 at 2.)   And counsel was appointed to address the claims without a distinction between the two proceedings:

> It is this court's view that counsel should be appointed to examine the record of defendant's convictions and his actual actions closely and his age at the time of commission with an eye to these recent Supreme Court cases. These issues have to be developed and presented to this court.

(*Id.* at 3.)

Accordingly, the undersigned concludes that Petitioner's seventh PCR proceeding was ultimately decided jointly with his eighth PCR proceeding.

**8. Eighth PCR – 2/19/13-11/12/13**

On February 25, 2013 Petitioner commenced his eighth PCR proceeding by filing a PCR Notice dated February 19, 2013, and arguing a change of law based on *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011(2010) (8th Amendment prohibits life without parole for juvenile not convicted of homicide), asserting his life sentence was cruel and unusual punishment given his minority. (Exh. EEE.)  In the same order which granted the motion to extend time to file a motion for rehearing in the seventh PCR, the PCR court found a basis to proceed on the February 25, 2013 notice (which it labelled as "a seventh notice of post-conviction relief"), appointed counsel and set a briefing schedule.  (Exh. FFF, Order 12/16/13 at 1.)

Counsel eventually filed a Notice of No Colorable Claim (Exh. HHH) and Petitioner was granted leave to file a *pro per* PCR petition, with counsel remaining in an advisory capacity.  (Exh. III, Order 2/19/15.)  Petitioner eventually filed his *pro per* PCR Petition (Exh. JJJ) raising claims under *Graham* and *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012).  In an Order filed June 2, 2015, the PCR court dismissed the petition as without merit.

On September 8, 2015 Petitioner filed a Motion for Rehearing dated September 1, 2015 (Exh. NNN).  In an Order filed October 13, 2015, the motion was denied  as without merit (noting that Petitioner asserted he had not received the order, and thus raised no ground for reconsideration).  (Exh. OOO, Order 10/13/15.)

Petitioner did not seek further review.

**9.  Ninth PCR – 1/25/17-10/7/24**

On January 25, 2017, Petitioner commenced his ninth PCR proceeding by filing through counsel a PCR Notice (Exh. PPP).  Petitioner asserted a claim and change of law citing, *inter alia, Montgomery v. Louisiana,* 577 U.S. 190, 136 S. Ct. 718 (2016). A Supplemental PCR Notice (Exh. QQQ) was filed by counsel on February 16, 2017.

On April 20, 2017, Petitioner filed with the PCR court a pro se Petition for Writ of Habeas Corpus (Exh. UUU), which was effectively stricken by the PCR Court as improperly filed because Petitioner was represented.  Petitioner's proceeding and other similar cases were combined for administration.  (Exh. RRR, Order 3/13/17; Exh. SSS, Order 4/25/17.)

Ultimately, counsel filed on August 1, 2022 a PCR Petition (Exh. ZZZ), arguing that his sentence of life with parole after 25 years, with consecutive sentences on the other charges of 21 years, was a de facto sentence of life without parole.  In an Order filed May 30, 2023, the PCR court dismissed the Petition on the merits.  (Exh. CCCC, Order 5/25/23.)

Petitioner filed through counsel a Petition for Review (Exh. DDDD).  On November 30, 2023, the Arizona Court of Appeals granted review but summarily denied relief based on failure to establish an abuse of discretion.  (Exh. FFF, Mem. Dec. 11/30/23.)  Petitioner then filed through counsel a Petition for Review by the Arizona Supreme Court (Exh. GGGG).  That court denied review in an order dated September 10, 2024.  The Arizona Court of Appeals issued its Mandate on October 7, 2024.  (Exh. HHHH, Mandate.)

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 21, 2025 (Doc. 1).  Petitioner's Petition asserts the following four grounds for relief:

> (1)    The appellate court erred in dismissing his claim "based on an [Eighth Amendment] violation" under *Miller v. Alabama*, 567 U.S. 460 (2012), due to the "excessiveness[s] and disproportionality of [the] sentence, whose crimes reflect transient immaturity."
>
> (2)    "Due process violation as to the Antijuvenile Death Penalty Act of 1988."
>
> (3)    "Due process violation . . . by way of breach of court procedure[] in the Petitioner[']s juvenile case, prior to transfer."
>
> (4)    A violation of Petitioner's Eighth and Fourteenth Amendment rights based on a "[b]reach of plea[] agreement in 90-90602."

(Order 1/29/25, Doc. 6 at 2.)

**Response** - On March 6, 2025, Respondents filed their Answer (Doc. 10). Respondents argue that Grounds 2, 3, and 4 are untimely by 27 years, and Ground 1 is untimely by 8 years. With regard to the latter, Respondents argue the claim accrued and the limitations period began to run on June 25, 2012 when the *Miller* decision issued, and the available statutory and equitable tolling is insufficient to render the Petition timely. Respondents further argue that Petitioner has procedurally defaulted his state remedies on his claims in Grounds 2, 3, and 4.

**Reply** - On March 19, 2025, Petitioner filed an Amended Reply (Doc. 15) (hereinafter "Reply"). Petitioner argues his Petition is timely because his statute of limitation did not begin to run until the Arizona Supreme Court's order denying review on September 10, 2024 in Petitioner's Ninth PCR Proceeding, and he can raise newly discovered claims at any time. He further argues that his claims in Grounds 2, 3, and 4 have never been raised previously, and thus are "newly discovered." He argues the merits of his claim in Ground 1, and argues that Grounds 2 and 3 are newly discovered, and amount to constitutional error.

**Supplements** – On August 22, 2025, the Court directed Respondents to supplement their Answer and the record to address the status of Petitioner's Motion for Rehearing in his seventh PCR proceeding and any related statutory tolling. Respondents filed their Supplement on September 12, 2025. Petitioner did not reply, and his time to do so expired on October 8, 2026.

/ /

### III.  APPLICATION OF LAW TO FACTS

**A.  TIMELINESS**

**1.  One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one-year limitations period are barred and must be dismissed.  *Id*.

**2.  Commencement of Limitations Period**

    **a.    Conviction Final**

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[4]

Here, Petitioner's direct review was his appeal.

Petitioner argues in his reply that the September 10, 2024 decision of the Arizona Supreme Court in his ninth PCR proceeding marks the relevant date for commencement of his one year. (Reply, Doc. 15 at 1-2.)  The effect of that proceeding is addressed hereinafter with regard to statutory tolling.  However, to the extent that Petitioner intends to suggest that this 2024 decision marks the commencement of his limitations period, he is mistaken.  That decision was not part of direct review, but rather collateral, post-conviction review, and Section 2244(d)(1)(A) refers only to "direct review."

Petitioner's direct appeal remained pending at least through July 24, 1992, when the Arizona Court of Appeals denied his appeal.[5] (Exh. J.)  Thereafter, Petitioner had 35

---

[4] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

[5] On June 8, 1992 Arizona eliminated direct appeals for pleading defendants in noncapital

days to seek review by the Arizona Supreme Court. Ariz. R. Crim. Proced. 31.19(c) (1992) (30 days); Ariz. R. Crim. Proced. 1.3 (5 days for mailing). Accordingly, Petitioner's time to seek review by the Arizona Supreme Court expired 35 days after the appellate court decision, or on Friday, August 28, 1992.[6]

However, the habeas statute of limitations was not adopted until April 24, 1996, after Petitioner's conviction had already become final. Consequently, Petitioner had a one-year grace period that commenced on April 25, 1996, and expired one year later, on April 24, 1997, in which he could file his habeas petition. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying the "anniversary" method for calculating expiration of limitations period).

Petitioner argues in his Reply that because his case predated the AEDPA he "can file as may PCRs as needed as long as the merits (Grounds) are newly discovered." (Reply, Doc. 15 at 2.) But the grace period does not eliminate the applicability of the "finality" rule in § 2244(d)(1)(A), it only extended it to April 24, 1997. Neither did the grace period restrict the applicability of the other commencement triggers, but only delayed their triggering to at least April 24, 2996.

### b. New Rights

The habeas limitations statute provides a later commencement date of "the date on

---

cases, making their first, of-right PCR proceeding their only form of appeal, and thus their "direct review" for purposes of § 2244(d)(1). *See* Ariz. Rev. Stat. § 13-4033(B) (1992); 1992 Ariz. Legis. Serv. Ch. 184 (H.B. 2481); *Summers v. Schriro*, 481 F.3d 710, 717 (9th Cir. 2007) (treating as "direct review"). Here, however, Petitioner's direct appeal was already pending prior to that date, was not affected, and thus it continues to constitute the direct review of his conviction.

[6] For purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). However, the Supreme Court "can review…only judgments of a 'state court of last resort' or of a lower state court if the 'state court of last resort' has denied discretionary review." *Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) (citing U.S. Sup.Ct. R. 13.1 and 28 U.S.C. § 1257(a)). Here, Petitioner did not seek direct review by the Arizona Supreme Court. Accordingly, the time for seeking a writ of certiorari with the U.S. Supreme Court cannot be considered in determining when Petitioner's judgment became final. *Id.*

which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2244(d)(1)(C).

Respondents concede that Petitioner's claim in Ground 1 arises from a "newly recognized constitutional right.  In particular, Petitioner relies on *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (June 25, 2012), in which the Supreme Court first held that "an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole, but only if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment."  *Jones v. Mississippi*, 593 U.S. 98, 100 (2021).  "*Miller* announced a substantive rule of constitutional law," and thus is retroactively applicable to cases on review.  *Montgomery v. Louisiana*, 577 U.S. 190, 212 (January 25, 2016), *as revised* (Jan. 27, 2016).

Although the Ninth Circuit has not yet issued a published decision on the issue, the undersigned concludes for the following reasons that the date of a finding of retroactivity is irrelevant to the calculation of the limitations period under § 2244(d)(1)(C), apart from it being a condition precedent to application of the rule.   **First**, a natural reading of the text of § 2244(d)(1)(C) explicitly ties the commencement only to the date of the initial recognition of the right.  **Second**, for purposes of section 2244(d)(1)(C), retroactivity need not be decided by the Supreme Court, a circuit court, or indeed any court other than the district court initially deciding the petition.  Indeed, subject to their jurisdictional limits, any court can apply the retroactivity framework under *Teague v. Lane*, 489 U.S. 288 (1989) for purposes of § 2244(d)(1)(C). Brian R. Means, *Made retroactively applicable to cases on collateral review*, Federal Habeas Manual § 9A:30 (June 2025).  *Cf. Tyler v. Cain*, 533 U.S. 656, 661(2001)  (exceptions on second and successive petitions for a new rule of constitution law "made retroactive…by the Supreme Court" under 28 U.S.C. § 2244(b)(2)(A) requires a holding on retroactivity by the Supreme Court); and Brian R. Means, *Rules made retroactive to cases on collateral review by the Supreme Court*, Federal Habeas Manual § 11:37 (June 2025).  **Third**, the Supreme Court has interpreted

identical language in the statute governing motions to vacate as tying the limitations period to the recognition of the right, concluding it "unequivocally identifies one, and only one, date from which the 1–year limitation period is measured: 'the date on which the right asserted was initially recognized by the Supreme Court.'" *Dodd v. United States*, 545 U.S. 353, 357 (2005) (quoting 28 U.S.C. § 2255(f)(3)). **Fourth**, the Ninth Circuit has agreed in an unpublished decision addressing claims under *Miller*. *See Steilman v. Michael*, 859 F. App'x 123, 125 (9th Cir. 2021). **Fifth**, other circuits have reached the same conclusion under § 2244(d)(1)(C). *See In re Rosado,* 7 F.4th 152, 157 (3d Cir. 2021); *Johnson v. Robert,* 431 F.3d 992 (7th Cir. 2005); *Brooks v. Jordan*, 2020 WL 4073268, at *2 (6th Cir. June, 8, 2020) (unpublished); and *Proctor v. Whitten*, 2021 WL 5755629, at *2 (10th Cir. Dec. 3, 2021) (unpublished). **Sixth**, leading treatises agree. *See* Davis, et al., *Events starting running of habeas limitations period—Recognition of constitutional right by Supreme Court*, 16A Fed. Proc., L. Ed. § 41:352 (December 2025) ("the period runs from the date the right was initially recognized, even if the Court does not declare that right to be retroactive until later"); and Brian R. Means, *When the limitations period commences for newly recognized rights*, Federal Habeas Manual § 9A:31 (June 2025). **Seventh**, other judges in the District of Arizona agree. *See e.g. Conley v. Shinn,* CV-22-0985-PHX-SRB-DMF, 2022 WL 18215951, at *10 (D. Ariz. Sept. 27, 2022), *report and recommendation adopted,* 2023 WL 142913 (D. Ariz. Jan. 10, 2023); *Guzman v. Shinn*, CV-21-1277-PHX-SPL-MHB, 2022 WL 21747975, at *4 (D. Ariz. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 21747983 (D. Ariz. Apr. 8, 2022); *Johnson v. Thornell*, CV-23-0004-TUC-AMM-MSA, 2025 WL 2393575, at *7 (D. Ariz. Feb. 19, 2025), *report and recommendation adopted sub nom. Johnson v. Shinn*, 2025 WL 2390651 (D. Ariz. Aug. 18, 2025); and *Kerl v. Shinn*, CV-21-0196-SPL-MTM, 2024 WL 4828498, at *3 (D. Ariz. Sept. 24, 2024), *report and recommendation adopted*, 2024 WL 4827449 (D. Ariz. Nov. 19, 2024).

Accordingly, Petitioner's limitations period on his *Miller* claim commenced running on June 26, 2012, the day after the June 25, 2012 decision in *Miller*, and absent

tolling expired one year later on June 25, 2013.

### c. New Facts

Section 2244(d)(1)(D) provides an alternative commencement of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner argues this provision applies to all of his claims. (Reply, Doc. 15 at 1-4.)

Petitioner fails to show that this provision applies to his claim in **Ground 1**. Petitioner would have been aware since his sentencing that he had "commit[ted] a homicide when he…was under 18" and that his consecutive sentences when combined amounted to what Petitioner argues is a defacto "sentence[] to life without parole." *See Jones*, 593 U.S. at 100. While he might not have been aware at sentencing whether the sentence was "mandatory," *Jones*, 593 U.S. at 100, he proffers no reason why he could not, with due diligence, have discovered that fact before his sentencing.

Moreover, the mandatory nature of his sentence was not a "fact" to be discovered, but rather a matter of law. Section 2244(d)(1)(D) does not extend to a lack of knowledge of the law, unless it constitutes a decision in Petitioner's own case. *Shannon v. Newland*, 410 F.3d 1083, 1088 (9th Cir. 2005) (distinguishing between discovery of changes or clarifications in state law and discovery of "factual predicate"). Under § 2244(d)(1)(D), "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." *Hasan v. Galaza*, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2001). The rationale is well put by the Seventh Circuit:

> Like most members of street gangs, Owens is young, has a limited education, and knows little about the law. If these considerations delay the period of limitations until the prisoner has spent a few years in the institution's law library, however, then § 2244(d)(1) might as well not exist; few prisoners are lawyers.

*Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000), *as amended* (Jan. 22, 2001).

Petitioner raises arguments in his Reply about the timeliness of Ground 1, based on the sentence being "disproportionate," errors in reports about the juvenile prosecution, and

- 17 -

an agreement that the additional charges were supposed to be dropped. (Reply, Doc. 15 at 3-4.)  But Petitioner proffers no information about when these facts were "discovered," nor anything to show that they could not have been discovered long ago with due diligence.

Regarding **Grounds 2, 3, and 4**, Petitioner argues that these must be "newly discovered" because they have not "been brought up before." (Reply, Doc. 15 at 2.)  But it is the discoverability of the claim, not when it has been presented to the state courts, which governs § 2244(d)(1)(D).  Petitioner proffers no information about when he discovered (or with due diligence could have discovered) the facts underlying his claims in these grounds.

**Ground 2** is based upon purported 1988 legislation (the "Antijuvenile Death Penalty Act of 1988") and a case, "Blythe," from 1978.  (Petition, Doc. 1 at 8.)  These are not predicate *facts*, but law.  And Petitioner makes no showing these were not discoverable before sentencing.

**Ground 3** is based upon the procedures employed in the trial court during the transfer from the juvenile court to the criminal court.  But Petitioner was present during these proceedings, and thus aware of those facts before sentencing.

**Ground 4** asserts a breach of the plea agreement when Petitioner was labelled "Deviant."  But Petitioner offers nothing to show he was not aware of the terms of the plea agreement or such labelling before the imposition of sentence.

Accordingly Petitioner fails to show he is entitled to a later commandment deadline because of undiscovered factual predicates.

**d.    Conclusion re Commencement**

Based on the foregoing, the undersigned concludes that Petitioner's conviction became final no later than August 28, 1992, upon expiration of his time to file a petition for review with the Arizona Supreme Court.  Thus, his ordinary one year began running on April 25, 1996 with the passage of AEDPA's statute of limitations and expired one year later, on Thursday, April 24, 1997.

Petitioner fails to show that his claims in Ground 2, 3, and 4 are subject to a latter

- 18 -

commencement time, whether based on new rules or new discovered factual predicates.

Petitioner's claim in Ground 1 is subject to the later commencement for new, retroactive rules. But the one year began running on that claim no later than June 26, 2012, after the *Miller* decision and without tolling expired on June 25, 2013.

### 3. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

### a.    Insufficient Tolling on Grounds 2, 3, 4

As discussed above Petitioner's limitations period on Grounds 2, 3 and 4 commenced running no later than April 25, 1996, and without tolling expired on April 24, 1997. Petitioner did not commence his first PCR proceeding until early 1995, signing his first PCR Notice (Exh. GG) on February 28, 1995 and filing it March 7, 1995, more than a year before his limitations period would have begun running. It remained pending, and Petitioner's one year habeas limitations period tolled, until Tuesday, October 1, 1996 when his time to see further review expired. Petitioner's one year began running thereafter, on October 2, 1996, and expired on October 1, 1997.

Petitioner's second PCR proceeding was not commenced until 2012, filing his PCR notice dated August 21, 2002 on September 19, 2002. By the earlier of those dates, Petitioner's limitations period had been expired for almost five years. Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, Petitioner has no statutory tolling applicable on these grounds, either from his second PCR proceeding or any subsequent proceeding.

### b.    Insufficient Tolling on Ground 1

As discussed herein above, Petitioner's limitations period on Ground 1 began

running on June 26, 2012 (after the *Miller* decision), and without tolling expired on June 25, 2013. Petitioner's **first through fifth PCR proceedings** were fully concluded and no longer pending prior to June 26, 2012. Accordingly, they provide no statutory tolling.

Petitioner's **sixth PCR proceeding** was commenced and dismissed in 2010. While Petitioner apparently still has pending an untimely motion for rehearing in that proceeding, the proceeding was dismissed as untimely. Statutory tolling of the habeas limitations period only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

Respondents have argued that a motion for rehearing that remains unresolved will be deemed denied by operation of law. (Supp. Resp., Doc. 33 at 1 The primary authority cited by Respondents is inapplicable because it dealt with circumstances where a petition is denied without the court explicitly addressing all of the claims purportedly included in the Petition. *See State v. Evans*, 252 Ariz. 590, 596, ¶*15,* 506 P.3d 819, 825 (Ct. App. 2022). This holding has its roots in cases where a motion is not addressed, but a final decision in the proceeding subsequently entered. *See e.g. State v. Mendoza-Tapia*, 229 Ariz. 224, 231, 273 P.3d 676, 683 (Ct. App. 2012) (motion for competency hearing deemed denied where sentence entered, *cited by Evans*); *State v. Hill*, 174 Ariz. 313, 323, 848 P.2d 1375, 1385 (1993, *cited by Mendoza-Tapai*) (motion to strike presentence report deemed denied where sentence and judgment entered); and *Sanchez v. Ryan*, CV-15-1257-PHX-JJT-JZB, 2016 WL 3660848 (D. Ariz. Mar. 10, 2016), *report and recommendation adopted*, 2016 WL 3654272 (D. Ariz. July 6, 2016) (motion for extension of time to file petition deemed decided when PCR petition eventually filed denied on the merits). With due deference to the deciding judge, the other federal case cited by Respondents failed to identify or address this distinction. *See Love v. Escapule,* CV-15-00924-PHX-ROS, 2016 WL 825837, at *2 (D. Ariz. Mar. 3, 2016) (applying *Hill* to a motion for rehearing in a PCR proceeding with no subsequent order). Here, there were no subsequent orders in Petitioner's sixth PCR proceeding to treat as a denial of the motion for rehearing.

Accordingly, it must be deemed to remain pending.

Moreover, Petitioner's motion for rehearing (even if deemed timely) was not an "application for…review with respect to the pertinent judgment or claim," but rather an application for review of the PCR Court's decision. It was thus merely a continuation of the *untimely* PCR proceeding. *See Ta Yoat Ni v. Ryan, No.* CV-13-01155-PHX-PGR, 2014 WL 2569139, at *5 (D. Ariz. June 9, 2014). Thus, none of that proceeding results in statutory tolling.

Even if not deemed a continuation of the untimely proceeding, but rather a new application for collateral relief, his Motion for Rehearing could not be deemed "properly filed." To be properly filed, an application must not only be timely, but also requires "its delivery and acceptance [must be] in compliance with the applicable laws and rules governing filings…for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Arizona requires that requests for relief from a conviction or sentence sought in the trial court be by either a Rule 32 post-conviction relief proceeding, a post-trial motion (*see* Ariz. R. Crim. Proced. 24 identifying motions for new trial, to vacate judgment, to modify sentence or correction clerical errors), or a petition for writ of habeas corpus. Ariz. Rev. Stat. § 13-4233. Moreover, a post-conviction proceeding can be commenced only by filing a notice of post-conviction relief. Ariz. Rev. Stat. § 13-4234(A). Petitioner's motion for rehearing was not a notice of post-conviction relief, a post-trial motion, or a habeas petition. Thus it was not "properly filed" and did not result in statutory tolling.

Petitioner's **seventh PCR proceeding** was commenced no earlier than February 22, 2012, before the limitations period on Ground 1 started running, when Petitioner dated his PCR Notice (Exh. BBB).[7]

---

[7] For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies. Under this rule, a prisoner's state filings are deemed "filed" (and tolling thus commenced) when they are delivered to prison officials for mailing. *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000). Moreover, the "mailbox rule" applies to determining whether

While portions of that proceeding were dismissed as untimely, as discussed herein above, his claim regarding his juvenile offender status was allowed to proceed on rehearing, and was decided with and remained pending with his eighth PCR proceeding.

Because they find no grant of the Motion for Rehearing, Respondents argue that under *Pace* this Court is bound by the original determination by the PCR Court that the proceeding was untimely. (Supp. Ans., Doc. 33 at 2.)  Indeed, in *Pace* the Court concluded that a state court's ruling on a timeliness issue is "the end of the matter." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).

But, for purposes of applying the "properly filed" requirement of § 2244(d), the federal courts look to the "last reasoned decision" of the state courts. *Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016).  Here, the state court's ultimate ruling on timeliness in the seventh PCR proceeding (when granting the motion for rehearing) was that the claim based on *Miller et al.* could proceed.

This Court cannot reject the state court's conclusion, and determine on its own to the contrary. "If a California court has held that a state habeas petition was timely or untimely, we are bound by that decision." *Valdez v. Montgomery*, 918 F.3d 687, 692 (9th Cir. 2019).  The only time the federal habeas court can go further is if the state court has issued a summary ruling, in which case the habeas court must examine the delay and determine for itself if the state court would have held the state petition untimely. *Id.* (quoting *Evans v. Chavis*, 546 U.S. 189, 198 (2006).)  Even if this Court could second guess the PCR court, Respondents proffer no basis for this Court to conclude that the

---

an Arizona prisoner's state filings were timely.  Although a state may direct that the prison mailbox rule does not apply to filings in its court, *see Orpiada v. McDaniel,* 750 F.3d 1086, 1090 (9th Cir. 2014), Arizona has applied the rule to a variety of its state proceedings. *See e.g. Mayer v. State,* 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995) (notice of direct appeal); *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999) (PCR notice); *State v. Goracke*, 210 Ariz. 20, 23, 106 P.3d 1035, 1038 (App. 2005) (petition for review to Arizona Supreme Court).  However, here there is no need to finally determine the applicability of either mailbox rule to determine the effect of Petitioner's filings, because even assuming filing as of the date of the documents, Petitioner's Petition is untimely.

*Miller* claim identified by the PCR court in the seventh PCR notice was untimely. Indeed, that Notice was filed less than four months after *Miller* was decided.[8]  Respondents make no suggestion that a four month delay in bringing a claim based on a new rule of law would render it untimely under Arizona's rules.

Petitioner's **eighth PCR** proceeding was commenced on February 25, 2013, during the pendency of his seventh PCR proceeding, and remained pending through October 12, 2015 when Petitioner's Motion for Rehearing was denied.  (*See* Exh. OOO, Order 10/12/15.)  A post-conviction application remains pending until the expiration of time allowed to seek further review, even if such review is not sought.  *Melville v. Shinn*, 68 F.4th 1154, 1160 (9th Cir. 2023).  Thereafter, Petitioner had 35 days to seek further review by the Arizona Court of Appeals.  Ariz. R. Crim. Proced. 32.9(c) (2015) (time for petition); and Ariz. R. Crim. Proced. 1.3(a) (2015) (five days after mailing). He did not seek such review, and thus his seventh and eighth PCR proceedings remained pending through Monday, November 16, 2015.

Thereafter, Petitioner's one year began to run, and expired on Wednesday, November 16, 2016.

Petitioner's **ninth PCR** proceeding was not commenced until more than three months later, on January 25, 2017, when Petitioner filed through counsel a PCR Notice (Exh. PPP).  Thus, this post-expiration proceeding neither reset the limitations period nor did it result in statutory tolling.  *Jiminez*, 276 F.3d at 482.

 **Conclusion re Statutory Tolling** – Based on the foregoing, the undesigned concludes Petitioner is not entitled to any statutory tolling on his claims in Grounds 2, 3 and 4.  And, Petitioner is entitled to tolling on the limitations period on his claim in Ground 1 from its inception through November 16, 2015, but his limitations period ran for the

---

[8] It is true the PCR court also referenced *Graham v. Florida*, 560 U.S. 48 (2010) decided several years earlier.  (Exh. FFF, Order 12/16/23 at 2.)  However, as recognized by the PCR court, *Graham* addressed only non-homicide juvenile offenders, and it was *Miller* that addressed homicide offenses.  The court noted: "Defendant claims he was 17 at the time of committing one or more of his charged homicide offenses."  (*Id.* at 3.)

following year, expiring on November 16, 2016.

**4.  Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner does not proffer any grounds for equitable tolling.  (*See* Petition, Doc. 1 at "11"; and Reply, Doc. 15, generally.)

Petitioner does assert that he was "unlettered in the law in 1990/91."  (Reply, Doc. 15 at 5.)  But "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."  *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). "[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.1999).  Rather, to qualify for equitable tolling, "an external force must cause the

untimeliness, rather than…merely oversight, miscalculation or negligence on the petitioner's part." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (citations, quotations and alterations omitted).

The undersigned finds no basis for equitable tolling.

### 5. Actual Innocence

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383 (2013). To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

Petitioner makes no claim of actual innocence based on new credible evidence, and the record reveals none.

### 6. Summary re Statute of Limitations

Taking into account the available statutory tolling, Petitioner's general one year habeas limitations period (applicable to Grounds 2, 3 and 4) commenced running on April 25, 1996, and expired one year later, on April 24, 1997. Petitioner is not entitled to any statutory tolling or equitable tolling on these claims and they are untimely.

Petitioner's one year on his *Miller* claim in Ground 1 commenced running on June 26, 2012, the day after the June 25, 2012 decision in *Miller,* and absent tolling expired one year later on June 25, 2013. However, Petitioner is entitled to statutory tolling during the

pendency of his seventh and eighth PCR proceedings, which was pending from the commencement of the limitations period through November 16, 2015. Thereafter, Petitioner's one year began to run, and expired on Wednesday, November 16, 2016. Petitioner has not shown he is entitled to equitable tolling on this ground. Accordingly, Ground 1 is untimely.

Nor has Petitioner shown actual innocence. Accordingly, all of his claims must be dismissed as untimely.

**B.  OTHER DEFENSES**

Respondents argue that Petitioner's claims in Ground 2 through 4 are procedurally defaulted. Because the undersigned concludes that Petitioner's claims in Grounds 2 through 4 are plainly barred by the statute of limitations this other defense is not reached.

**IV.  CERTIFICATE OF APPEALABILITY**

The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2253(c)(3). *See also* Rules Governing § 2254 Cases, Rule 11(a).

Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling as to Grounds 2, 3 and 4.

Jurists of reason might find it debatable whether the district court was correct in the procedural ruling as to Ground 1. In particular, the conclusion that the seventh PCR proceeding was decided with (and thus concluded with) the eighth PCR proceeding is debatable.

However, a certificate of appealability still should not issue because jurists of reason would not find it debatable whether the petition states a valid claim of the denial of a constitutional right. The Ninth Circuit has held that where the age of an Arizona juvenile offender was actually considered at sentencing, *Miller* does not justify relief even in the face of Arizona's temporary elimination of parole. *See Jessup v. Shinn*, 31 F.4th 1262 (9th Cir. 2022). *Cf State ex rel. Mitchell v. Cooper*, 256 Ariz. 1, 535 P.3d 3 (2023), *cert. denied sub nom. Bassett v. Arizona*, 144 S.Ct. 2494 (2024). Here, although the trial court adopted the Plea Agreement's stipulation of a sentence of life with parole, it explicitly considered Petitioner's age at sentencing. (*See* Exh. BB, R.T. 5/17/91 (sentencing) at 31-32.) The undersigned acknowledges that Petitioner's circumstances are somewhat unique from the cited authority, given the stipulation to the life sentence. But because the sentence given effectively includes parole, *Miller* simply does not apply.

Moreover, the intervening passage of Ariz. Rev. Stat. § 13-716 (eff. 7/24/14) (reinstituting parole for juvenile offenders sentenced to life with release) renders harmless any *Miller* error at sentencing. *Bassett v. Thornell*, CV-24-2352-PHX-SRB (JFM), 2025 WL 3473395 (D. Ariz. Sept. 19, 2025), *report and recommendation adopted*, CV-24-02352-PHX-MTL, 2025 WL 3471698 (D. Ariz. Dec. 3, 2025) (applying deferential habeas review to similar claims).

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED:**

(A) Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED WITH PREJUDICE**.

(B) To the extent the foregoing findings and recommendations are adopted in the District

Court's order, a Certificate of Appealability be **DENIED**.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

However, pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.    Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: February 13, 2026

25-0169r RR 25 08 15 on HC.docx

James F. Metcalf
United States Magistrate Judge